**Beatrice FRIEBIS and April Friebis, Plaintiffs,**

**Robert Lee Friebis, Plaintiff/Cross–Appellant,**

**Becky Friebis, Plaintiff–Appellee/Cross–Appellant,**

v.

**John KIFER, Defendant–Appellant/Cross/Appellee,**

**City Of Columbus, Defendant.**

Nos. 00–4351, 00–4432.

United States Court of Appeals, Sixth Circuit.

Aug. 29, 2002.

Before NORRIS and BATCHELDER, Circuit Judges; and FORESTER, District Judge.*

OPINION

ALAN E. NORRIS, Circuit Judge.

Columbus police officer John Kifer appeals from a jury verdict of $5,000 awarded to plaintiff Becky Friebis. Four members of the Friebis family filed suit against Kifer and the City of Columbus based on events that occurred at the scene of a traffic accident involving April Friebis. The complaint included counts of assault and battery, false imprisonment, intention-

---

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

al infliction of emotional distress, and violation of the Fourth Amendment right to be free of excessive force. A fifth count alleged that the City had inadequately trained its officers.

On appeal, defendant Kifer argues that the district court erred when it refused to enforce a release signed by Becky Friebis that reduced state criminal charges lodged against her by Kifer in exchange for a waiver of any civil claims. Kifer also raises an evidentiary issue involving the district court's decision to permit introduction of certain of his prior acts.

In a cross-appeal, plaintiffs contend that the district court should have instructed the jury differently.

For the reasons outlined below, we affirm the judgment in all respects.

## I.

On September 10, 1997 plaintiff April Friebis, the daughter of plaintiffs Robert and Beatrice Friebis, was involved in an accident on her way home from work. The accident occurred not far from the Friebis home. Friends called their house and April's parents, as well as her older sister, plaintiff Becky Friebis, hurried to the scene. The testimony concerning what occurred at the accident scene was not entirely consistent. Suffice it to say, however, that a verbal altercation between Becky Friebis and Officer Kifer developed that resulted in Becky's arrest. Her father was also arrested when he attempted to intervene.

Becky testified that she was placed in the cruiser after sustaining these injuries: "When he grabbed my arm here, he grabbed my wrist with one arm and the other arm went right here and then he twisted me up. Once he released this part of my arm, that's what bruised, it is my real fatty part."

Robert Friebis essentially corroborated Becky's testimony. Like Becky, he stated that the family members obeyed the officer's instructions to stay back from the accident scene. He recalled the encounter between Becky and Kifer in these terms:

[T]he officer came up to her and said that's enough, and he grabbed her and twisted her arm. And when he started taking her to the cruiser, I could see she was in pain and on her tiptoes and I immediately went over. And I took him by the arm and touched him and told him this is not necessary, she hasn't done anything to deserve this. And he jumped back and told me I was under arrest and to get into the cruiser. And I complied and got into the cruiser.

Kifer charged the pair with obstructing official business by remaining in the street near the scene of an accident and interfering with paramedics. He also charged Robert with resisting arrest.

Neither Becky nor her father had ever been arrested before. After their arrests, their attorney negotiated a plea agreement on behalf of his clients with the assistant city prosecutor. As part of the agreement, the pair signed release-dismissal agreements that waived all civil claims arising from the incident in exchange for reduced charges. Robert pleaded no contest to a minor misdemeanor charge of disorderly conduct; Becky entered a bond forfeiture of $160.

Despite the releases, Robert and Becky, along with Beatrice and April Friebis, filed suit in state court alleging claims of assault and battery (as to Beatrice, Robert and Becky); false arrest and imprisonment (as to Robert and Becky); excessive force and an unreasonable search and seizure in violation of the Fourth Amendment (as to Robert and Becky); intentional infliction of emotional distress (as to all four plain-

tiffs); and a final claim against the City for failure to train its police officers adequately. The defendants removed the action to federal court.

The case went to trial in September 2000 and included testimony about the plea negotiations that resulted in the release-dismissal agreements. In reaching its decision, the jury completed a verdict form that asked whether Becky and Robert Friebis had voluntarily signed the release-dismissal agreements. As to both plaintiffs, the jury answered yes. It went on to reject all of the claims advanced by plaintiffs with one exception: the jury concluded that Officer Kifer had used excessive force when arresting Becky Friebis and awarded her $5,000.00.

Based upon the jury's conclusion that plaintiffs had entered into the release-dismissal agreement voluntarily, Officer Kifer renewed his request, originally advanced in a motion for summary judgment, that the district court enforce the agreement signed by Becky Friebis. Although it invoked a different rationale, the court once again declined the invitation:

> [T]he public interest would be served by allowing this verdict to stand. There was principally substantial evidence of police misconduct as reflected by the fact that there was a specific finding of excessive force in the execution of the legitimate and lawful arrest of Becky Friebis.

## II.

1. *Should the Release–Dismissal Agreements Have Been Enforced by the District Court?*

The Supreme Court upheld the validity of release-dismissal agreements, as long as they meet certain criteria, in *Town of Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405, (1987). The Court looked to three general considerations when determining whether enforcement of a release-dismissal agreement is appropriate: whether it was entered into voluntarily; whether there is evidence of prosecutorial misconduct; and whether enforcement furthered the public interest. 480 U.S. at 398. In a concurrence, Justice O'Connor made a point that has subsequently become the law of this circuit: "[I]t is the burden of those relying upon such covenants to establish that the agreement is neither involuntary nor the product of an abuse of the criminal process." *Id.* at 399.

In *Coughlen v. Coots*, 5 F.3d 970 (6th Cir.1993), this court echoed the concerns of Justice O'Connor:

> Permitting such releases may tempt public officials to bring frivolous criminal charges in order to deter meritorious civil complaints. The risk and expense of a criminal trial can easily intimidate even an innocent person whose civil and constitutional rights have been violated. The coercive power of criminal process may be twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim of such abuse, but also of society as a whole.

*Coughlen*, 5 F.3d at 973 (quoting *Rumery*, 480 U.S. at 400 (O'Connor J., concurring in part)). This court went on to note, "The burden of proving each of these points falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense." *Id.* at 974. Because the district court had not engaged in the kind of analysis required by *Rumery*, but instead treated the release as presumptively valid, we reversed and remanded for further consideration. In doing so, we stressed the fact that evidence of police misconduct should factor into the analysis:

> While a district court conducting a *Rumery* analysis should not prejudge

the civil plaintiff's § 1983 claim, the existence of substantial evidence of police misconduct in a particular case is by no means irrelevant to a proper *Rumery* inquiry, since it could be probative of the motives of the prosecutor for seeking such an agreement, as well as the degree to which enforcing the agreement would serve the public interest.

*Id.* at 974.

Although the evidence of police misconduct in the instant case did not rise to the level presented to this court in *Coughlen*, a jury nonetheless concluded that Officer Kifer violated the constitutional rights of Becky Friebis. Accordingly, it would be inconsistent with *Rumery* and *Coughlen* if we did not take that conclusion into consideration when determining whether the public interest is served by enforcement of the release-dismissal agreement. Given the jury's verdict, we affirm the district court's decision not to enforce the release-dismissal agreement.

*2. Rule 404(b) Considerations*

"Evidence of other crimes, wrongs, or acts" may be admitted in a criminal trial for purposes other than to prove character. *See* Fed.R.Evid. 404(b). Admission of evidence under Rule 404(b) is decided under a three-step inquiry. First, the trial court must make a preliminary determination as to whether sufficient evidence exists that the prior act occurred. Second, the district court must make a determination as to whether the "other act" is admissible for a proper purpose under Rule 404(b). Third, the district court must determine whether the "other acts" evidence is more prejudicial than probative under Rule 403. *United States v. Mack*, 258 F.3d 548, 553 & n. 1 (6th Cir.2001); *United States v. Gessa*, 971 F.2d 1257, 1261–62 (6th Cir. 1992). We review a district court's determination as to whether evidence may be admitted under Rule 404(b) for an abuse of discretion. *Mack* at 553 (citing *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir.1999)).

Since 1990, 22 complaints had been filed against Officer Kifer; two were found to have merit by the police department. The district court denied Officer Kifer's motion in limine that sought to exclude introduction of evidence of the two meritorious claims:

First, there is sufficient evidence that the other acts occurred as two incident reports were filed, the incidents were investigated, and Officer Kifer was disciplined for one of them. Second, the other acts are admissible to show "absence of mistake or accident," and/or motive or intent. Finally, the Court does not find that the evidence would be "more unfairly prejudicial than probative." Unlike Rule 404(b), this test is a fifty-fifty balancing test weighing prejudice against the probative value of the evidence. The Plaintiffs, as stated, are not attempting to admit evidence of the twenty-two complaints lodged against Officer Kifer, but only one, that the Defendants admit had merit.

Over renewed objection, Marcella Molihan testified briefly at trial that she filed a citizen's complaint against Officer Kifer in 1996 after he had bruised her arm. Photographs of her injured arm were admitted into evidence. Molihan's testimony was relatively brief, however, and the court followed it with this directive to the jury:

Ladies and gentlemen, evidence that an act was done by defendant Kifer at some other time is not, of course, any evidence of proof whatsoever that at another time defendant Kifer performed a similar act. Evidence of a similar act may not be considered by you, the jury, in determining whether the defendant Kifer actually performed the same phys-

ical acts or act alleged in this case. Nor may such evidence be considered for any other purpose whatsoever unless the jury finds by a preponderance of the evidence from other evidence in the case standing alone that the defendant physically did the act alleged in this case.

The evidence of other acts may be considered for other purposes such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

In addition to the testimony of Ms. Molihan, Officer Kifer objects to a reference during plaintiffs' opening statement to the unsubstantiated complaints made against him. Kifer also stresses that counsel's remarks regarding the testimony of Ms. Molihan during opening statement made clear that he was using her to convince the jury that Officer Kifer was acting similarly with respect to Becky Friebis:

> He had done these sorts of things before. He had a pending lawsuit against him at the time on a complaint that a woman named Marcella Molihan had made where he treated her in almost identical fashion: became enraged, red faced, started screaming at her.
>
> This woman was in her 60's, grabbed her so hard that it left bruise marks all the way around where he was holding her, came into her kitchen and living room, slammed her up against the wall....
>
> [T]his officer, he did it before. He had 22, 22 citizen complaints for similar internal affairs incidents on his record. Ms. Moulihan may come to testify, the other people will not, but the department knew about this guy. They knew about all those complaints.

After opening statement, counsel for Officer Kifer moved for a mistrial based upon counsel's allusion to the 22 complaints. The court chastised plaintiffs' counsel, but did not grant a mistrial:

> [T]he Court has ruled that evidence of other infractions will come in to show no accident or mistake, not to show compliance therewith. And I think that the context in which it was spoken came perilously close to violating the Court's order but not so much so that the Court is going to at this time declare a mistrial.

The court then gave the jury a limiting instruction:

> [Y]ou have heard in the opening statement of the plaintiff's reference to other complaints that were lodged against Officer Kifer.... [T]he arguments of counsel are not evidence.
>
> ....
>
> The evidence with respect to other acts would only be admissible to show absence of mistake or accident, not to show that he acted in conformity therewith on another occasion.

■ The manner in which the trial unfolded reminds us of why we review Rule 404(b) rulings for abuse of discretion. While we are troubled by trial counsel's implication that, because Officer Kifer "did it before" he would act inappropriately again, the district court was clearly caught off guard by this line of argument and responded by rebuking counsel and giving the jury a limiting instruction. In our view, the district court responded appropriately to the shifting, often unexpected, dynamics of trial by acting swiftly to correct any potential prejudice. On balance, therefore, we conclude that counsel's remarks, while inappropriate, were not unduly prejudicial to defendant Kifer.

### 3. Cross–Appeal Concerning Jury Instructions

Becky and Robert Friebis cross-appeal by challenging the district court's refusal

to give certain jury instructions that they requested. We review jury instructions as a whole to determine if they adequately inform the jury of the relevant considerations and "provide a basis in law for aiding the jury in reaching its decision." *Jones v. Consolidated Rail Corp.*, 800 F.2d 590, 592 (6th Cir.1986). We will reverse a jury verdict only in situations where the instruction, viewed as a whole is "confusing, misleading, and prejudicial." *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir.2000). Finally, we will not reverse a decision on the basis of an erroneous jury instruction where the error is harmless. *See United States v. Toney*, 161 F.3d 404, 412–13 (6th Cir.1998).

Specifically, plaintiffs take issue with the fact that the district court declined to elaborate on what "obstructing official business" means and also did not give an instruction on the First Amendment right to free speech. As Officer Kifer points out in response, the complaint contains no independent First Amendment claim. Rather, plaintiffs sought this instruction as a means of challenging the legality of the underlying charges. They wished the jury to believe that they were not obstructing official business by exercising their right to speak at the scene of an accident. As the district court recognized, however, the proposed jury instructions go to the underlying state court prosecution, which had already been resolved by the plea agreements:

> If I gave [Officer Kifer's requested] instructions on the obstructing and disorderly, then I could see your argument that you should have the First Amendment instruction. Because if we were trying that particular case, that would be your defense. Your defense would be they have the right to shout. And [Kifer's] position is no, they don't. Under the laws of Ohio, once a police offi-

cer tells them a couple of times to get back, they have to stay back.

> And that's why I say I'm not going to give an instruction on obstructing or disorderly and I'm not going to give an instruction on First Amendment. I am going to allow [Kifer] to argue what his witnesses have testified to. Just like you elicited testimony from Officer Kifer that he knew that they had First Amendment rights.

■ The Friebises do not contend that the instructions that were given were incorrect, just that they were overly cryptic and therefore had the potential to mislead. The district court intentionally kept the instructions brief with an eye towards avoiding jury confusion. We conclude that the instructions were neither confusing, misleading, nor prejudicial. Having found no error, we deny plaintiffs' cross-appeal.

### III.

The judgment entered by the district court is **affirmed.**

FORESTER, Dissenting.

I agree with the well-written majority opinion on all points except the question relating to the release-dismissal agreements. Because I believe that the agreements should have been enforced, I respectfully dissent from that portion of the majority's opinion.

In the two cases cited by the majority, *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), and *Town of Newton v. Rumery*, 480 U.S. 386, 387, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987), both the United States Supreme Court and this court noted that permitting certain releases "may tempt public officials to bring *frivolous criminal charges* in order to deter *meritorious civil complaints.*" *Coughlen*, 5 F.3d at 973 (quoting *Rumery*, 480 U.S. at 400) (empha-

sis supplied). This court also noted in *Coughlen* that evidence of police misconduct should factor into the analysis and agreements "should be scrutinized closely in cases where *substantial evidence supports an allegation of police misconduct....*" *Id.* at 974 (emphasis supplied). The following examples of police misconduct were cited by the court:

- following use of excessive force, police officers file *unfounded* criminal charges to cover up their own conduct or force the victims to give up their causes of action; and

- prosecutors, aware of a victim's meritorious civil claim, thereafter file *unfounded* criminal charges to protect police officers.

*Id.* (citing O'Connor's concurrence in *Rumery,* 480 U.S. at 400) (emphasis supplied).

Given the language of these cases, I believe that there are two required findings in a case such as this: (1) that the plaintiffs have a meritorious civil cause of action; and (2) that the criminal charges brought against them were *unfounded.* Based upon the jury's finding of excessive force by Officer Kifer, the first element appears to be met in this case. However, I do not believe that the facts show the criminal charges against Becky and Robert Friebis to have been unfounded. An independent eyewitness to the events was available to testify against these appellants and apparently would have told a story very different from theirs, a story that would have supported Officer Kifer's version of events. Further, the court below specifically noted the excessive force was used "in the execution of the *legitimate and lawful* arrest" of the appellants.

Finally, I believe the facts of this case to be much closer to those presented in *Hill v. City of Cleveland,* 12 F.3d 575 (6th Cir.1993), wherein the appellant was rep-

resented by counsel, she was not in custody, she had time to consider the idea of a release in general, and the agreement was reviewed by and executed under the supervision of a judge.

Because I do not believe the charges against the appellants to have been unfounded or artificially trumped up, I do not believe that there was any police or prosecutorial misconduct *with respect to the signing of the release* in this case and, therefore, the release-dismissal agreements should have been enforced.