*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0290P (6th Cir.)
File Name: 04a0290p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

TAHLER MACBOYLE,
  *Plaintiff-Appellant,*

  *v.*

  No. 03-3784

CITY OF PARMA, et al.,
  *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 02-01487—James Gwin, District Judge.

Argued: August 5, 2004

Decided and Filed: September 1, 2004

Before: KENNEDY, SUTTON, and COOK, Circuit
Judges.

---

### COUNSEL

**ARGUED:** Brent L. English, LAW OFFICE OF BRENT L.
ENGLISH, Cleveland, Ohio, for Appellant. Michael P.
Maloney, LAW OFFICE, Westlake, Ohio, for Appellees.
**ON BRIEF:** Brent L. English, LAW OFFICE OF BRENT
L. ENGLISH, Cleveland, Ohio, for Appellant. Michael P.
Maloney, LAW OFFICE, Westlake, Ohio, Timothy G.

Dobeck, OFFICE OF THE LAW DIRECTOR, Parma, Ohio,
for Appellees.

---

### OPINION

---

KENNEDY, Circuit Judge.   Plaintiff appeals an order
granting summary judgment to Defendants City of Parma and
individual Parma Police Officers[1] in this § 1983 action based
on the alleged use of excessive force during the arrest.
Plaintiff argues that the district court erred when it upheld the
validity of a release-dismissal agreement in granting the
motion for summary judgment.  Finding the release met the
requirements of *Newton v. Rumery*, 480 U.S. 386 (1987), we
affirm.

### BACKGROUND

This § 1983 case stems from the arrest of Plaintiff Tahler
MacBoyle on the night of July 29, 2000.  Plaintiff sued
Defendants City of Parma and several Parma Police Officers
for using excessive force and causing permanent injuries, in
carrying out that arrest.  Plaintiff claims that the Parma Police
Officers violated his Fourth and Fourteenth Amendment
rights, and that City of Parma is liable for malicious
prosecution, negligence, and failure to train.

On July 29, 2000, at approximately 11:30 p.m., Parma
Police Department dispatched Defendants Pinc and Ciryak to
the home of Kimberly Guder, 6511 State Road, apartment
204, in Parma, Ohio, to investigate a noise disturbance.
Ms. Guder was hosting a surprise party for her boyfriend,
Paul Kopin, who had recently turned nineteen.  Ms. Guder

---

[1] Patrolmen Edward Pinc, Kenneth Chihil, Daniel Heinz, Daniel
Ciryak, Christopher Dillenbeck, Victor Beleske, Wayne Kresak, and
Joseph Duganier; and Sergeants James Blair and Gary Kuchta.

invited about thirty people to the party, including Mr. Kopin's mother, Shirley Kopin, and Ms. Kopin's boyfriend, Plaintiff MacBoyle. Plaintiff was thirty-four at the time of the party. Ms. Kopin and Plaintiff both attended the party and were at the apartment when the police officers arrived. Several guests had brought alcohol to the party, and the party goers were consuming alcohol. According to Defendants, when they arrived at the apartment complex, they observed a female and male noticing them and running to the second floor of the apartment complex. As the Defendants approached the apartment, a male with keys to the apartment[2] let the police officers into Ms. Guder's apartment. The officers believed they entered the apartment with consent. At the time of the entry, Plaintiff was on the apartment's balcony with Ms. Kopin and Ms. Guder.

Inside the apartment, the police officers observed fifteen to twenty individuals. Many of those individuals in the possession of alcoholic beverages appeared to be underage. When the officers requested the name of the apartment's owner, no one responded. When the officers began requesting identification from the individuals present, no one responded. During this period, several individuals, including Plaintiff, entered the living room. Defendants claim that Plaintiff began using vulgarities and demanding to know who let the officers in. Plaintiff claims that it was the police officers who used vulgarities while questioning the party goers and that he, Plaintiff, was attempting to diffuse the situation by politely asking the police officers why they were in the apartment. Plaintiff further claims that he asked the police officers to leave only when they failed to respond to his inquiries, and that the police offices declined to leave.

Defendant Pinc asked Plaintiff for identification. Defendants claim that Plaintiff refused to give any

identification, and, instead, continued with loud vulgarities and demanded that the officer produce a search warrant. Plaintiff claims that another guest, Mr. Kopin, and not he, used profanities and that Defendants confused the two of them. Defendants claim that at one point during the discussion, Plaintiff moved toward Defendant Pinc. Defendant Pinc put his hand up to stop Plaintiff from approaching and called for backup police officers. One of those officers, Defendant Chihil, went to the apartment's balcony and instructed the individuals to return into the apartment for identification purposes. Defendants claim that Plaintiff began walking toward the balcony, that they advised him to remain inside the apartment three times, and that he refused to obey their instructions. Plaintiff, on the other hand, claims that, at this point, he decided to call the Mayor's office. Plaintiff also says that the officers, using more profanity, instructed him to get off the phone, and when he refused, one of the officers grabbed the phone and threw it across the room. Plaintiff further says that an officer struck him on the head with a flashlight and that the officers continued their assault on him by throwing him on to a table and then to the floor, and then running him out of the apartment head first into the apartment's metal door.

Plaintiff was charged with obstructing official business, resisting arrest and disorderly conduct. Mr. Kopin and two other guests were also charged with various offenses. The cases were consolidated for trial. While his criminal case was pending, Defendant, on advice of his counsel, entered into a release-dismissal agreement with all Defendants (the "Release Agreement"). Pursuant to the Release Agreement, Plaintiff waived all rights to sue Defendants. The City agreed to dismiss the charges of resisting arrest and obstructing official business and to amend the disorderly conduct charge.[3] Notwithstanding the Release Agreement, Plaintiff filed the

---

[2] Apparently, the male was a party guest to whom Ms. Guder had given the keys so he could get back inside the apartment.

[3] Plaintiff later pleaded no contest to minor misdemeanor disorderly conduct.

instant action. Defendants argued, and the district court found, that the Release Agreement prevents Plaintiff from bringing this action.

**ANALYSIS**

The Supreme Court has upheld the validity of release-dismissal agreements whereby a criminal defendant releases his right to file a civil rights action in return for a prosecutor's dismissal of pending criminal charges, as long as the agreement meets certain criteria. *See generally Town of Newton v. Rumery*, 480 U.S. 386 (1987). The enforcement of such an agreement is appropriate if a court decides that (1) it was entered into voluntarily; (2) there is no evidence of prosecutorial misconduct; and (3) the enforcement furthers the public interest. *Id.* at 398. The burden of proof in this analysis "falls upon the party in the § 1983 action who seeks to invoke the agreement as a defense." *Coughlen v. Coots*, 5 F.3d 970, 974 (6th Cir. 1993). We derived the rationale for this allocation of the burden of proof from Justice O'Connor's concurrence in *Rumery*:

> Permitting such releases may tempt public officials to bring frivolous criminal charges in order to deter meritorious civil complaints. The risk and expense of a criminal trial can easily intimidate even an innocent person whose civil and constitutional rights have been violated. The coercive power of criminal process may be twisted to serve the end of suppressing complaints against official abuse, to the detriment not only of the victim of such abuse, but also of society as a whole.

*Rumery*, 480 U.S. at 400 (O'Connor, J., concurring in part) (*quoted in Coughlen*, 5 F.3d at 973). As the district court correctly noted, a court may not, in conducting its *Rumery* analysis, "prejudge the plaintiff's § 1983 claim and will look for 'the existence of substantial evidence of police misconduct in a particular case . . . since [such evidence] could be probative of the motives of the prosecutor for

seeking such an agreement, as well as the degree to which enforcing the agreement would serve the public interest.'" *MacBoyle v. City of Parma*, No. 1:02-CV-1487, slip op. at 7 (N.D. Ohio Mar. 26, 2002) (citing *Coughlen*, 5 F.3d at 974).

The district court conducted the three-factor *Rumery* analysis and concluded that the Release Agreement should be upheld.

With respect to the voluntariness prong, the district court stated:

> Plaintiff MacBoyle was thirty-four years old and represented by an attorney when he signed the Release Agreement. He is a college graduate who has been employed since 1989 and takes part in continuing professional education seminars. Plaintiff MacBoyle was not incarcerated when he signed the Release Agreement, and there is no evidence that MacBoyle did not have ample time to consider the agreement before signing it. In fact, Plaintiff MacBoyle claims that he signed the release out of concern for Shirley Kopin, Paul Kopin and Kim Guder, who also had all the criminal charges besides minor misdemeanor criminal conduct dismissed as a result of Plaintiff's and their releases. Plaintiff MacBoyle's signing of the Release Agreement was undeniably voluntary.

*MacBoyle v. City of Parma*, No. 1:02-CV-1487, slip op. at 7-8 (N.D. Ohio Mar. 26, 2002). Plaintiff presents a number of objections to this conclusion. Because these objections lack any merit, we conclude, without unnecessary discussion, that the district court properly found that Plaintiff voluntarily signed the Release Agreement. We emphasize that the fact that Plaintiff signed the release out of concern for the others charged in the event does not affect the voluntariness of his act.

With respect to the prosecutorial misconduct prong, the district court stated:

. . . Plaintiff MacBoyle offers no real evidence of prosecutorial misconduct. Plaintiff MacBoyle does not claim that any of the charges against him were in any way trumped up. In fact, given the police officers [sic] version of the incident, the criminal charges seem reasonable. MacBoyle claims that the prosecutor changed his mind from dismissing all the charges to wanting the Plaintiff and the other indicted party goers to plead to one charge of minor misdemeanor disorderly conduct. Plaintiff MacBoyle also says that the prosecutor should not have conditioned the dismissal on all the indicted party goers signing the release. This Court finds that such evidence, even if true, does not rise to the level of prosecutorial misconduct. There is no rule against a prosecutor changing his mind. Plaintiff MacBoyle does not claim that he accepted an earlier offer whereby all claims were dismissed, and then the prosecutor changed his mind and forced him to accept another offer. Rather, Plaintiff claims that the prosecutor contemplating dismissing all charges, thought better of it, and changed his mind. Such activity is not misconduct. Linking the agreements was also not misconduct. All the charges against the party goers were reasonable in light of the police officers [sic] description of the incident. MacBoyle was free to not sign the Release Agreement if he chose not to.

*MacBoyle v. City of Parma*, No. 1:02-CV-1487, slip op. at 8 (N.D. Ohio Mar. 26, 2002). The district court's decision on this point was, thus, a legal one. Plaintiff has presented us with no legal authority to conclude that what the prosecutor did in this case amounted to misconduct. Plaintiff simply contends that the presence of conflicting testimony amounts to "substantial evidence" of prosecutorial misconduct under *Coughlen*. However, we have already held that the mere "existence of discrepancies among the accounts of

prosecution witnesses does not amount to 'substantial evidence' of police misconduct such that an inference of prosecutorial misconduct under *Coughlen* arises." *Burke v. Johnson*, 167 F.3d 276, 286 (6th Cir. 1999). If the discrepancy *among* the prosecution witnesses is not sufficient to constitute prosecutorial misconduct, then certainly a discrepancy *between* the prosecution witnesses and Plaintiff's witnesses is not enough to rise to the level of prosecutorial misconduct. Accordingly, we find that the district court properly found that there was no prosecutorial misconduct.

With respect to the public interest prong, the district court found that:

. . . enforcing the Release Agreement serves public interest in that such agreements enable parties to resolve issues ami[c]ably themselves, weed out unmeritorious claims and charges, and conserve[] precious judicial resources. The evidence shows that Plaintiff MacBoyle agreed to the Release Agreement voluntarily without any prosecutorial misconduct. Public interest mandates holding parties to the agreements they enter into on their own volition. Nullifying the Release Agreements would provide a disincentive to prosecutors from agreeing to release-dismissal agreements in the future. Therefore the public interest is served by enforcing the Release Agreement.

*MacBoyle v. City of Parma*, No. 1:02-CV-1487, slip op. at 8-9 ( N.D. Ohio Mar. 26, 2002). The district court's recital of factors would apply to every release-dismissal agreement. It is true of all such agreements that they "enable parties to resolve issues ami[c]ably themselves, weed out unmeritorious claims and charges, and conserve[] precious judicial resources." It is also true that nullifying such agreements "would provide a disincentive to prosecutors from agreeing" to them in the future. However, in the absence of a determination by the district court that Plaintiff's claims were "unmeritorious," a finding that the Release Agreement in this

case would not adversely affect relevant public interests requires some further analysis.

As we noted in an earlier opinion, this element is the "least well-defined element of a *Rumery* analysis." *Coughlen*, 5 F.3d at 975. We explained that "this standard can be satisfied if the prosecutor demonstrates that obtaining the release was motivated by an independent, legitimate criminal justice objective" and that this "does not appear to create a particularly difficult hurdle for the prosecutor to clear." *Id.* (noting that "the reason proffered by the prosecutor for the release-dismissal agreement in this case–'to aid in the disposition of its heavy case load'–would probably suffice under ordinary circumstances.") In *Coughlen*, we also provided a non-exhaustive list of circumstances in which "[r]elease dismissal agreements [] can be legitimate criminal justice tools . . ." *Id.* (offering as examples, situations where (1) "police misconduct is alleged, but the prosecutor is genuinely unable to ascertain the truth surrounding the allegation"; (2) "the cost of prosecution would outweigh the benefit accruing to the public from a conviction; [3] the strength of evidence of criminal conduct is doubtful even though charges were filed in good faith . . ."; (4) "criminal charges are not the product of prosecutorial misconduct and both sides benefit substantially from a balanced settlement in the sense that both avoid exposure to potential liabilities and expenses.")

The district court's failure to make adequate findings of fact, however, does not warrant a remand. We have, in the past, determined whether the public interest prong was satisfied even in the absence of a district court finding when there was sufficient evidence in the record to do so. *Hill v. Cleveland*, 12 F.3d 575, 579 (6th Cir. 1993).[4] We will do so in this case. In *Hill*, a panel made an independent finding

---

[4]We continue to remind the district courts to make such findings to make it easier for this Court to evaluate the district court's decision.

under the following circumstances: (1) the failure of a state trial court to reach a decision on the merits of a criminal case (7-1 vote to acquit)[5]; (2) the conflicting and adversarial positions taken by the parties on the proof; (3) the connection between the civil rights action and the criminal charges; (4) the lack of prosecutorial overreaching; (5) the nature of charges brought. Our case is very similar with respect to factors (2) through (5). We do have an absence of an apparent, albeit legally nonexistent, acquittal. However, this difference weakens the position of Plaintiff in the instant case. The *Hill* plaintiff was likely to be believed and thus acquitted in a retrial, and nevertheless lost in his attempt to void the release-dismissal agreement. Plaintiff in the instant case has merely asserted his innocence. The record reflects that the testimony of the parties was in direct conflict as to what had indeed occurred. Accordingly, we find that Plaintiff in this case has an even weaker argument than the *Hill* plaintiff and we make an independent determination that enforcing the agreement would not adversely affect the relevant public interests.

## CONCLUSION

For the reasons stated above, we affirm the district court's order granting summary judgment to all Defendants.

---

[5]The trial court declared a mistrial in the first trial because it was discovered that a police report had been improperly placed in the jury room. Apparently, there either was an eight-person jury or the alternate jurors had not been excused when the mistrial was ordered. In any case, the release-dismissal agreement was signed in anticipation of a retrial.