992 F.2d 1217
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit
Russell J. Staggs, Plaintiff-Appellant,
v.
David Ausdenmoore, Defendant-Appellee.
 No. 92-3172.
 United States Court of Appeals, Sixth Circuit.
 April 27, 1993.
 
 Before NELSON and SILER, Circuit Judges, and MILES, Senior District Judge*
 PER CURIAM.
 
 
 1
 Plaintiff-appellant Russell J. Staggs appeals the district court's award of summary judgment in favor of defendant-appellee David Ausdenmoore in this action under 42 U.S.C. § 1983. Staggs alleges that his constitutional rights were violated by Ausdenmoore, a Cincinnati police officer who arrested Staggs on disorderly conduct charges. The state criminal charge was dismissed at the conclusion of a bench trial, after Staggs signed a release of all claims arising out of the incident. On cross-motions for summary judgment, the district court concluded that the release was voluntary, and therefore granted Ausdenmoore summary judgment on the § 1983 claim, dismissing a pendent state law claim for malicious prosecution without prejudice. For the reasons which follow, we affirm.
 
 
 2
 * At approximately 7:30 p.m. on September 26, 1990, Staggs and co-worker Brian Banks were on their way to Riverfront Stadium to attend a Cincinnati Reds National League championship game in Cincinnati, Ohio. Banks was carrying an open can of beer. Staggs admits that he had been drinking, although he denies that he was carrying alcohol at this time. As the two men were walking through a crowded pedestrian walkway, they were confronted by Ausdenmoore and another Cincinnati police officer, who were dressed in street clothing as part of an increased security force for the area. What can only be described as a minor, non-violent confrontation ensued, and Ausdenmoore arrested Staggs on disorderly conduct charges. Staggs was taken to the Hamilton County Justice Center, booked, and released at approximately 2:00 a.m.
 
 
 3
 On November 1, 1990, Staggs was tried in Hamilton County Municipal Court by Judge Joseph Luebbers. Staggs, who was not in jail, was represented at the trial by attorney Jack Rubenstein. Staggs had been charged under Ohio Rev.Code Ann. § 2917.11(A)(1) (Baldwin 1982), which required proof that he had engaged in "fighting, in threatening harm to persons or property, or in violent or turbulent behavior." After the conclusion of the proofs, Judge Luebbers made the following remarks:
 
 
 4
 ... Complaint says engaging in violent and turbulent behavior.... Well, it's pretty close. Sign a release. Sounds like what was involved here was needling the officer. It's under the wrong paragraph for that.[1]
 
 
 5
 At this point, Staggs alleges, he signed the release at issue in this case. Afterward, Judge Luebbers dismissed the charge. The release in question is a short pre-printed form, signed by Staggs and witnessed by signature of his attorney Rubenstein and by Judge Luebbers.
 
 
 6
 On March 29, 1991, Staggs filed the complaint in this § 1983 action, alleging that Ausdenmoore violated his rights under the Fourth and Fourteenth Amendments. Staggs also asserted a pendent state law claim of malicious prosecution. Staggs included in his complaint a separate count requesting a declaratory judgment that the release which he had signed was obtained under duress and was void as a violation of his rights under the Fifth and Fourteenth Amendments. Staggs later filed an amended complaint, in which he asserted that Ausdenmoore had also violated his First Amendment rights.
 
 
 7
 Staggs moved for a declaratory judgment, and for a partial summary judgment that the release was void and unenforceable. Ausdenmoore also moved for summary judgment, contending that the release was voluntary and valid. The district court concluded that Staggs had voluntarily waived his § 1983 claim, and granted Ausdenmoore's motion. The court also dismissed Staggs' pendent claim without prejudice for lack of jurisdiction. This appeal followed.
 
 II
 
 8
 We must determine whether the district court erred in granting summary judgment to Ausdenmoore on Staggs' claims under § 1983, on the basis that the release signed by Staggs barred these claims. This court reviews a grant of summary judgment de novo, using the same test applied by the district court. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). Only factual disputes which may have an effect on the outcome of a lawsuit under substantive law are "material." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[2]
 
 
 9
 The release which Staggs signed purports to waive "all claims" which might arise out of his arrest. Because, therefore, it purports to waive a right to sue under § 1983--a federal statute--the question of its enforceability is a question of federal law. Town of Newton v. Rumery, 480 U.S. 386, 107 S.Ct. 1187, 1191 (1987).[3] In Rumery, the Supreme Court held that an agreement in which a criminal defendant releases his right to file a § 1983 action in return for a prosecutor's dismissal of pending criminal charges is not per se invalid or unenforceable. 107 S.Ct. at 1192-1194. Justice Powell, writing for a plurality of the Court in the case, concluded that the district court's decision to enforce the agreement was correct because the agreement was voluntary, there was no evidence of prosecutorial misconduct, and the enforcement of the agreement would not adversely affect the relevant public interests. Id. at 1195.[4]
 
 
 10
 Staggs argues that the release which he signed is unenforceable for the following reasons: (1) enforcement of the release is contrary to public policy; (2) Staggs signed the release involuntarily, under "duress"; and (3) the release is void for lack of consideration. We address each of these arguments in turn.
 
 
 11
 Staggs argues that enforcement of the release would be contrary to public policy because the state judge improperly "ordered" the execution of the release during the course of a criminal trial in an effort to protect Ausdenmoore from civil liability. He also contends that Ausdenmoore has not identified any public interest which would be harmed if the release were not enforced. However, "[o]rdinarily, public policy does not prohibit an otherwise valid release from acting as a waiver of a federal statutory cause of action." Shaheen v. B.F. Goodrich Co., 873 F.2d 105, 107 (6th Cir.1989). In addition, the plurality opinion in Rumery suggests that the avoidance of the burden and expense of defending "marginal" or unjust § 1983 claims is an "important public interest." 107 S.Ct. at 1193. At least one other appellate court has also refused to adopt a per se rule barring the use of release agreements where the crime charged involves a police officer, such as disorderly conduct or resisting arrest, even though the potential for abuse of rights is great where such vague offenses are involved. See Lynch v. City of Alhambra, 880 F.2d 1122, 1127 (9th Cir.1989) (holding that a per se rule of unenforceability in such situations would be "inconsistent with the Rumery Court's emphasis on a case-by-case analysis of the propriety of release agreements").
 
 
 12
 A review of the transcript of the criminal trial does not support Staggs' characterization of the state judge's suggestion as an "order" directing Staggs to either sign the release or suffer conviction. We also do not believe that mere judicial involvement in the release-dismissal process implicates a public interest against enforcement.[5] While we are not entirely comfortable with the fact that the judge in this case apparently initiated the signing of the agreement rather than merely presiding over its conclusion, we are convinced that the judge's words, as well as the openness of the court proceeding itself, suggest no impropriety or overreaching. The execution of the agreement in this case took place in open court, subject to full public scrutiny. No public interest in exposing alleged police misconduct has been thwarted.[6] Under the circumstances, we find no basis for concluding that enforcement of the agreement would be contrary to the public interest.
 
 
 13
 Staggs also argues that the release is not enforceable under the principles set forth in Rumery because he did not sign it voluntarily. Staggs contends that although his attorney was present and witnessed the execution of the release, Staggs' own signature cannot be deemed voluntary because it was given not in the "neutral" surroundings of his attorney's office after time for appropriate consultation and reflection, but in court, on a preprinted form, immediately before the judge was to announce his verdict on criminal charges. Staggs contrasts his own situation with that of the plaintiff in Rumery, who signed a release which was drafted by his own counsel, after three days of reflection and after having discussed the release with his counsel for one hour in counsel's office.
 
 
 14
 We note, as did Justice O'Connor concurring specially in Rumery, that "[m]any factors may bear on whether a release was voluntary...." 107 S.Ct. at 1196. Initially, we look to the release itself, which contains the following conspicuous language:
 
 
 15
 I am executing this Release voluntarily, with full knowledge of my rights, and am under no compulsion or duress.
 
 
 16
 In support of his motion for declaratory judgment and for partial summary judgment in which he requested the district court to hold the release unenforceable, Staggs submitted his own affidavit, in which he stated merely "I signed the release because I believed that Judge Luebbers might find me guilty if I did not sign the release." Joint Appendix at 36.
 
 
 17
 As we noted previously, although the state judge suggested the execution of the release at the conclusion of the criminal trial, his actions can hardly be characterized as exerting pressure on Staggs capable of overcoming his free will. In particular, the judge's words that the criminal case was "close" and that Staggs was charged under the "wrong" statutory section could have meant only one thing to a legally-trained ear: that acquittal was forthcoming. Although Staggs urges us to give little weight to the fact that he was represented by an attorney at his criminal trial including at the time he signed the release, we believe that this fact is entitled to substantial weight. As the court noted in Berry v. Peterson, 887 F.2d 635, 640 (5th Cir.1989), in criminal and habeas cases "we assume that an individual defendant is generally bound by his competent counsel's advice and knowledge," and "[w]e see no reason why such a rule should not exist in this analogous situation." In similar situations, we have considered representation by competent counsel to provide an adequate foundation for a determination of the voluntariness of a waiver of rights. See Leaman v. Ohio Dept. of Mental Retardation, 825 F.2d 946, 956 (6th Cir.1987) (en banc), cert. denied, 487 U.S. 1204 (1988) in which we stressed that
 
 
 18
 '[u]nder our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system.'
 
 
 19
 (quoting Estelle v. Williams, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976)). Staggs' criminal lawyer, who competently defended his client's fundamental constitutional rights in the context of a trial on disorderly conduct charges, must be deemed capable of advising his client with respect to the assertion of those same rights in a civil forum under § 1983.
 
 
 20
 Staggs further argues, however, that whether he voluntarily signed the release is a factual question for the jury, and he contends that the district court erred in deciding the issue of voluntariness on a motion for summary judgment. Voluntariness may well be a factual question. See Berry, 887 F.2d at 637 ("Voluntariness is the only possible fact issue in the Rumery formulation, hence, the only issue even arguably suitable for a jury"); cf. Cordrey v. Euckert, 917 F.2d 1460, 1465 (6th Cir.1990) ("the issue of waiver is a question of law or at least of mixed law and fact"), cert. denied, 111 S.Ct. 1391 (1991). However, we note that Staggs' motion papers filed below invited the district court to rule on the validity of the release as a matter of law.[7] Under the doctrine of "invited error," Staggs cannot now be heard to complain that the district court accepted this invitation. See Harvis v. Roadway Express, Inc., 923 F.2d 59, 60-61 (6th Cir.1991) (applying doctrine where plaintiff requested jury trial on 42 U.S.C. § 1981 claim and then argued on appeal that the claim should not have been put to a jury). In ruling on the cross-motions for summary judgment, the court had before it the written release, which contains both the signatures of Staggs and his criminal attorney and states on its face that it was voluntarily signed. Although the burden of proof is on the party claiming waiver, Cordrey, 917 F.2d at 1465, we believe that these facts sufficiently supported Ausdenmoore's motion for summary judgment in his favor. The district court also had before it a transcript of the criminal trial demonstrating the circumstances of the execution. Staggs' own scant, one and one-half page affidavit in which he states "I signed the release because I believed that Judge Luebbers might find me guilty if I did not sign the release" provided the district court little factual foundation on which to base a determination that the release was unenforceable. Moreover, despite Staggs' present assertions regarding his subjective feelings at the time he executed the release, he has presented no evidence that he expressed any subjective involuntariness at the time he signed the release, and his criminal attorney made no objections on the record in response to the judge's suggestion that his client sign a release. Viewed in their totality, the circumstances surrounding the execution of the release in this case simply do not suggest that Staggs' signature was involuntary, and given Staggs' request that the district court rule on the validity of the release as a matter of law, Staggs has no reason to complain that the district court did so.
 
 
 21
 Staggs also argues that the release is void for want of consideration, and he contends that the district court improperly failed to even address this issue. However, the court below did address this issue, finding little merit in Staggs' argument:
 
 
 22
 Although the release in the case before us does not specifically state that the consideration for the release is dismissal of the criminal charge, it appears from the record and from Mr. Staggs' affidavit that such was the case.
 
 
 23
 Joint Appendix at 95. The district court was apparently referring to Staggs' statement that he signed the release "because I believed that Judge Luebbers might find me guilty." This clearly shows consideration. Although Staggs stresses that unlike the plaintiff in Rumery, he did not avoid prosecution, we see little distinction. In exchange for his agreement releasing Ausdenmoore from liability, Staggs avoided a verdict (most likely a "not guilty" one) and instead received a dismissal of the criminal charge under circumstances in which even he concedes double jeopardy most likely applies. If the threat of conviction is avoided even though a criminal defendant may believe he can win acquittal, consideration exists. Accordingly, we hold that the district court properly concluded that the release was supported by consideration.
 
 III
 
 24
 In dismissing the § 1983 claim as barred by the release, the district court also dismissed Staggs' pendent state law claim for malicious prosecution "without prejudice for lack of subject-matter jurisdiction." Joint Appendix at 98. Whether or not to dismiss a pendent state law claim after all federal claims have been dismissed is a question left to the discretion of the district court. 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction where all claims over which the court had original jurisdiction are dismissed); see Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1009 (6th Cir.1987). This Circuit has expressed a strong policy in favor of dismissing such claims. See Service, Hospital, Nursing Home and Public Employees Union v. Commercial Property Services, Inc., 755 F.2d 499, 506 n. 9 (6th Cir.) ("This circuit has moved away from the position that the court has discretion to retain jurisdiction over a pendent state claim where the federal claim has been dismissed before trial"), cert. denied, 474 U.S. 850 (1985). The district court dismissed Staggs' pendent claim without prejudice, as was appropriate. Staggs has not even suggested that this was an abuse of discretion, and we therefore hold that the district court properly dismissed this aspect of the case without prejudice.
 
 IV
 
 25
 For the foregoing reasons, we AFFIRM the decision of the district court.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 Judge Luebbers was apparently referring to other numbered paragraphs of Ohio Rev.Code Ann. § 2917.11, which do not require proof of "violent or turbulent behavior," but merely such behavior as "making unreasonable noise" or using "grossly abusive language," Ohio Rev.Code Ann. § 2917.11(A)(2); "[h]indering or preventing the movement of persons," Ohio Rev.Code Ann. § 2917.11(A)(4); or creating a "physically offensive" condition, Ohio Rev.Code Ann. § 2917.11(A)(5)
 
 
 [2]
 Staggs argues that the district court erred in accepting the defendant's version of the facts. However, as we view the record, the facts material to the resolution of this appeal--those pertaining to the circumstances surrounding the execution of the release--are not disputed. What are disputed are the facts surrounding Staggs' initial arrest, such as whether Staggs was drinking or carrying alcohol at the time he was stopped by Ausdenmoore
 
 
 [3]
 Staggs also argues that the release is void under Ohio law. Ohio law may be pertinent to the validity of his waiver of any pendent state law claim, but it is not pertinent to Staggs' § 1983 claim. In view of our disposition of Staggs' state law claims in Part III of our decision, infra, we find it unnecessary to address his arguments regarding the validity of release-dismissal agreements under Ohio law
 
 
 [4]
 Justice O'Connor, agreeing with the result in Rumery, wrote a special concurrence in order to emphasize her view that the burden of establishing the enforceability of such agreements should be borne by the civil rights defendants. 107 S.Ct. at 1195-1197
 
 
 [5]
 Indeed, the plurality opinion in Rumery suggests that it is preferable for a judicial officer to preside over the execution of such agreements:
 We also note that it would be helpful to conclude release-dismissal agreements under judicial supervision. Although such supervision is not essential to the validity of an otherwise proper agreement, it would help ensure that the agreements did not result from prosecutorial misconduct.
 
 
 [107]
 S.Ct. at 1195 n. 10. See also Hammond v. Bales, 843 F.2d 1320, 1323 (10th Cir.1988) (noting that judicial supervision of the execution of release-dismissal agreement "mitigate[d] the possibility of abuse")
 
 
 [6]
 As one Court of Appeals has noted, when a release is signed after the conclusion of a trial, this allows the alleged improper police practices in question to be exposed to full public inquiry before any waiver is made. See Bushnell v. Rossetti, 750 F.2d 298, 301 (4th Cir.1984) (rejecting argument that release executed during recess of court trial after guilty finding but before sentencing was void as against public policy)
 
 
 [7]
 In requesting partial summary judgment on the issue of the release's validity, Staggs clearly stated that "[r]esolution of the validity of the release is primarily one of law, not fact. The only relevant fact is whether Judge Luebbers ordered plaintiff to sign the release which is a matter of record." Joint Appendix at 33